IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRINA J. BOWEN,<br>    **Plaintiff**<br><br>    v.<br><br>NATIONWIDE MUTUAL<br>INSURANCE COMPANY and<br>BENEFITS ADMINISTRATIVE<br>COMMITTEE, PLAN<br>ADMINISTRATOR OF<br>NATIONWIDE-SPONSORED<br>HEALTH AND WELFARE<br>EMPLOYEE BENEFITS PLAN,<br>    **Defendants** | No. 1:19-cv-00017<br><br>(Judge Kane) |

## MEMORANDUM

Before the Court are Defendants Nationwide Mutual Insurance Company ("Nationwide") and Benefits Administrative Committee, Plan Administrator of Nationwide-Sponsored Health and Welfare Employee Benefits Plan ("BAC")'s Motion to Dismiss (Doc. No. 9) Count II of Plaintiff Trina J. Bowen ("Plaintiff")'s Amended Complaint (Doc. No. 2), pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons provided herein, the Court will deny Defendants' motion.

**I.    BACKGROUND**

    **A.    Procedural Background**

Plaintiff initiated the above-captioned action by filing a complaint against Defendants in the Court of Common Pleas of Dauphin County, Pennsylvania, on September 11, 2018. (Doc. No. 1 ¶ 1.) Nationwide removed the case to the Middle District of Pennsylvania on January 4, 2019. (Doc. No. 1.) On January 10, 2019, Plaintiff filed an Amended Complaint, asserting a claim for benefits and related relief under Section 502 of The Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3) ("Count I"), and for

discrimination and retaliation under Section 510 of ERISA ("Count II") (Doc. No. 2), arising out of Nationwide's alleged wrongful termination of Plaintiff, and BAC's subsequent denial of severance benefits and ERISA rights. (Id.)

On January 24, 2019, Defendants filed a motion to dismiss the discrimination and retaliation claims under ERISA at Count II of Plaintiff's Amended Complaint (Doc. No. 9), accompanied by a brief in support of the motion to dismiss (Doc. No. 10). Plaintiff filed a brief in opposition to the motion to dismiss on February 6, 2019, approximately two (2) weeks later. (Doc. No. 11.) On February 19, 2019, Defendants filed a reply brief. (Doc. No. 12.) Accordingly, the motion has been fully briefed and is ripe for disposition.

### B. Factual Background[1]

Plaintiff was hired by Nationwide on October 26, 1987, and worked for Nationwide until her termination on October 6, 2017. (Doc. No. 2 ¶ 10.) During Plaintiff's roughly thirty (30) year career with Nationwide, she consistently received positive feedback and favorable performance evaluations. (Id. ¶ 11.) On March 2, 2017, Plaintiff and her supervisor, Mr. Comparato, were working with defense counsel to settle a workers' compensation case. (Id. ¶ 12.) Mr. Comparato and Plaintiff realized that the case would require more than the $50,000 settlement authority previously extended to defense counsel, and, without Plaintiff's involvement, Mr. Comparato authorized and approved a settlement around $75,000. (Id. ¶¶ 13-14.) In response to the ultimate settlement, Plaintiff asked Mr. Comparato if the additional settlement authority he authorized had been documented, to which he stated that it had. (Id. ¶ 16.) Plaintiff alleges that on March 6, 2017—the very next day—Mr. Comparato issued a "bogus" write-up to her, which he emphasized that no one in the company knew about. (Id. ¶

---

[1] The following factual background is taken from the allegations of Plaintiff's Amended Complaint. (Doc. No. 2.)

2

17.) Plaintiff and Mr. Comparato met on March 9 to discuss the write-up, and during this meeting, Mr. Comparato stated that Plaintiff was not keeping up with her workload. (Id. ¶ 19.) In response, Plaintiff offered to take a salary reduction and a demotion to "Loss Time I" or a Medical Only Desk, an idea rejected by Mr. Comparato.[2] (Id. ¶¶ 20-21.)

On June 6, 2017, Plaintiff emailed Mr. Comparato for a ninety-day (90) update, and Mr. Comparato responded that same day. (Id. ¶ 22.) Plaintiff emailed Mr. Comparato the next day, June 7, 2017, for clarification about his June 6 email, their March 9 meeting, and his March 6 notice. (Id. ¶¶ 22-23.) In his response email, Mr. Comparato reaffirmed that his June 6 communication to Plaintiff was only a continuation of the March notice. (Id. ¶ 24.) However, on August 1, 2017, Mr. Comparato allegedly issued a misnamed final notice that was a second unwarranted notice. (Id. ¶¶ 24-25.) The notice stated that Plaintiff had forty-five (45) days, or until September 15, 2017, to improve her performance. (Id. ¶ 26.) Further, Plaintiff was advised that the Human Resources ("HR") Department was aware of Mr. Comparato's first unofficial notice on March 6. (Id. ¶¶ 26-27.) Plaintiff met for a consultation with Mr. Welch of the HR Department in an attempt to communicate her concerns regarding her treatment by Mr. Comparato, but Mr. Welch did not offer her any options or solutions to address her concerns. (Id. ¶¶ 28-29.) Plaintiff was able to reduce her caseload, and Mr. Comparato's forty-five (45) day deadline passed without any disciplinary action or criticisms of Plaintiff. (Id. ¶¶ 30, 32.)

On October 6, 2017, Mr. Comparato, accompanied in the office by another manager and on the phone by Mr. Welch, informed Plaintiff that she had been terminated and issued her a termination letter. (Id. ¶¶ 33-34.) On May 1, 2018, Plaintiff filed a claim with the BAC under

---

[2] Plaintiff and Defendants have stated different position names for Plaintiff. Plaintiff has characterized her position as "Loss Time Level II." (Doc. No. 2 ¶ 20.) Defendants named Plaintiff's position as "Claims Specialist II, Workers Compensation." (Doc. No. 10 at 2.)

the Nationwide Severance Pay Plan (the "Plan") seeking severance benefits of $30,415.81. (Id. ¶ 35.) BAC denied Plaintiff's claim, and Plaintiff appealed that denial by letter dated July 2, 2018. (Id. ¶¶ 35-36.) By letter dated July 30, 2018, BAC upheld its original decision to deny severance benefits to Plaintiff based on, in part, the fact that Plaintiff's separation from employment was an "Involuntary Termination" rather than a "Job Elimination," the latter of which would have entitled Plaintiff to benefits. (Id. ¶ 37.)

Plaintiff alleges that Defendants acted arbitrarily and capriciously in denying severance benefits to her through their allegedly improper determination that Plaintiff's separation from employment was an "Involuntary Termination," rather than a "Job Elimination" occurring as part of a contemporaneous reduction in force. (Id. ¶¶ 38-41.) Plaintiff alleges that Nationwide acted in bad faith in denying severance benefits to her and, furthermore, that the severance claims process lacks fundamental fairness and due process. (Id. ¶¶ 43-44.)

## II. LEGAL STANDARD

A motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint's factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Generally, a court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must determine whether the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678.

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit requires district courts to engage in a two-art analysis when reviewing a Rule 12(b)(6) motion: (1) first, a court should separate the factual and legal elements of a claim, accepting well-pleaded factual matter and disregarding legal conclusions; (2) second, a court should determine whether the remaining well-pled facts sufficiently demonstrate that a plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Facial plausibility exists when the plaintiff pleads factual content "that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (internal citations omitted).

In conducting its analysis, a court must accept all well-pleaded factual allegations in the complaint as true for purposes of determining whether the complaint states a plausible claim for relief, and must view the factual allegations in the light most favorable to the plaintiff. Phillips v. Cnty of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). The court's determination on a rule 12(b)(6) review is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." United States ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 259, 302 (3d Cir. 2011) (internal citations omitted). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663-64.

In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also

consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

### III. DISCUSSION

Section 510 of ERISA states:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140. In Count II of her Amended Complaint, Plaintiff alleges that Defendants retaliated against her by wrongfully terminating her under false pretenses for participating in a statutorily protected activity. (Doc. No. 2 ¶¶ 10, 41, 43, 55(b).) Further, Plaintiff alleges that Defendants interfered with the attainment of her ERISA rights by terminating her under false pretenses in order to prevent her from obtaining severance benefits, enhanced salary, and retirement benefits. (Doc. No. 2 ¶¶ 10, 17, 25, 35-37, 41, 50(h), 55(a).)

As noted above, Defendants seek dismissal of Plaintiff's claims of retaliation and interference asserted in Count II of her Amended Complaint. (Doc. No. 10.) Defendants argue that Plaintiff's allegations of retaliation cannot sustain a cause of action because the statutorily protected activity engaged in by her (i.e., her filing for severance benefits) did not occur until seven (7) months after the adverse action taken against her, and, therefore, the allegations of the Amended Complaint do not satisfy the requirement of a causal connection between participation in the protected activity and the adverse action. (Id. at 5-6.) To the extent that Plaintiff's Amended Complaint alleges interference under Section 510 of ERISA, Defendants argue that any such interference claim fails because Plaintiff's Amended Complaint does not allege

sufficient facts supporting a reasonable inference that Defendants terminated Plaintiff with the intent to violate ERISA, relying instead on legal conclusions and speculation. (Id. at 7-10.)

### A. ERISA Retaliation Claim

"A plaintiff establishes a prima facie [claim] of retaliatory discharge pursuant to § 510 of ERISA by demonstrating that: (1) he or she participated in a statutorily protected activity; (2) he or she was subject to an adverse employment action; and (3) there is a causal connection between the participation and the adverse action." Smith v. W. Manheim Twp., No. 1:11–CV–778, 2011 WL 5117618, at *4 (M.D. Pa. Oct. 25, 2011) (citing Eckelkamp v. Beste, 315 F.3d 863, 871 (8th Cir. 2002); C.F. Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)). The causal connection can be demonstrated by the plaintiff through proof of either "'(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" See Smith, 2011 WL 5117618, at *4 (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

The Court agrees with Defendants that Plaintiff's Amended Complaint fails to allege facts suggesting that her statutorily protected activity is causally connected to her termination. While the Amended Complaint asserts that Plaintiff suffered an adverse employment action—termination by Defendants—(Doc. No. 1 ¶¶ 10, 34), it only alleges one statutorily protected activity, her filing for severance benefits, which the Amended Complaint asserts occurred seven (7) months after Plaintiff's termination. (Doc. No. 1 ¶¶ 32-35; Doc. No. 10 at 6.) Accordingly, Plaintiff has "not allege[d] that the timing of the alleged retaliatory action can support an inference that [her] protected activity caused the [Defendants] to engage in the so-called retaliatory action." See Lauren W., 480 F.3d at 268. The Court next assesses whether Count II states a plausible claim for ERISA interference.

B.     **ERISA Discrimination Claim**[3]

"A plaintiff can establish a prima facie claim of ERISA interference by demonstrating: '(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.'" Smith, 2011 WL 5117618, at *2 (quoting Grogan v. Duane, Morris & Heckscher, No. 90-CV-4105, 1991 WL 98888, at *3 (E.D. Pa. June 4, 1991)). "To state a claim under § 510, plaintiff must show that her employer had 'specific intent to violate ERISA.'" Manning v. Sanofi-Aventis, U.S. Inc., No. 3:11-cv-1134, 2012 WL 3542284, at *5 (M.D. Pa. Aug. 14, 2012) (quoting Smith, 2011 WL 5117618, at *2). "Proof that termination prevented an employee from accruing additional ERISA benefits 'alone is not probative of intent.'" Smith, 2011 WL 5117618, at *2 (quoting Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 785 (3d Cir. 2007) (citation omitted)). "Where no direct evidence of intent to violate ERISA exists, the Third Circuit implements a burden-shifting analysis to determine if specific intent exists." Manning, 2012 WL 3542284, at *5 (quoting Jakimas, 485 F.3d at 785 (citing DiFederico v. Rolm Co., 201 F.3d 200, 205 (3d Cir.2000))). "At the motion to dismiss stage, plaintiff has the initial burden to plead a prima facie case." Manning, 2012 WL 3542284, at *6 (quoting Pailleret v. Jersey Constr., Inc., No. 09-1325, 2010 WL 143681, at *2 (D.N.J. Jan. 11, 2010)). This standard is not "overly burdensome." See Smith, 2011 WL 5117618, at *3. A plaintiff must "plead facts that, when taken as true, constitute circumstantial evidence of the employer's specific intent to interfere with the ERISA plan." See id. at *3 n.2.

---

[3] Courts in this circuit have characterized claims under Section 510 of ERISA as "discrimination" and "interference" interchangeably. See Gavalik v. Cont'l Can Co., 812 F.2d 834, 852 (3d Cir. 1987); Brenton v. F.M. Kirby Ctr. for the Performing Arts, 363 F. Supp. 3d 550, 556 (M.D. Pa. 2019); Lerner v. Gen. Elec. Co., No. 93–5787, 1995 WL 580041, at *3 (E.D. Pa. Sept. 29, 1995).

In the instant case, Plaintiff's Amended Complaint contains sufficient factual matter, accepted as true, to state a claim for ERISA interference that is plausible on its face. Plaintiff has alleged sufficient facts supporting a reasonable inference that Defendants interfered with the attainment of her ERISA rights by terminating her under false pretenses in order to prevent her from obtaining severance benefits, enhanced salary, and retirement benefits. The first element, prohibited conduct, is met since Plaintiff alleges that she was terminated. See 29 U.S.C. § 1140 (prohibiting "discharge"). The third element, attainment of a right, is met since Plaintiff alleges that she was seeking severance benefits, enhanced salary, and retirement benefits. (Doc. No. 2 ¶¶ 35-41.) The only remaining element in dispute is element two, or whether the Defendants terminated Plaintiff for the purpose of interfering with her attainment of ERISA rights.

Similar to Manning, in this case, Plaintiff alleges that Defendants terminated her under the false pretense of "Involuntary Termination," rather than a "Job Elimination," in order to interfere with her entitlement to severance benefits under the ERISA plan. See Manning, 2012 WL 3542284, at *6. Plaintiff alleges that the September performance deadline established by her August 1 notice passed without any further disciplinary action or criticisms, and that Defendants met with Plaintiff, and others, in September to notify them of a continued reduction in staff. (Doc. No. 2 ¶¶ 31-32.) Only after the September group meeting and three weeks after the alleged performance deadline—twenty (20) days before Plaintiff would be achieving thirty (30) years of service—was Plaintiff called into Mr. Comparato's office and terminated for alleged performance problems. (Id. ¶¶ 10, 31-34.) In sum, Plaintiff alleges that the disciplinary action taken against her, prior to and including her termination, was a pretext to disguise Defendants' true intent to reduce staff and prevent Plaintiff from obtaining severance benefits, enhanced salary, and retirement benefits, in violation of ERISA. See Smith v. W. Manheim Twp., No.

1:11-CV-778, 2012 WL 3779651, at *4 (M.D. Pa. Aug. 31, 2012). Plaintiff also alleges that Mr. Comparato told HR about the first notice in March, after emphasizing to Plaintiff that no one else knew about it, and that Mr. Comparato filed another misnamed final notice, which was in fact a second "unwarranted" notice. Such allegations of false representations further support a plausible inference of "specific intent." See Jenkins v. Union Labor Life Ins. Co., Inc., No. 10–7361, 2011 WL 3919501, at *6 (E.D. Pa. Sept. 7, 2011) (holding that defendant misleading plaintiffs allowed a plausible inference of specific intent); Smith, 2012 WL 3779651, at *4 (finding that allegations of false representations made to plaintiff weighed in favor of showing "specific intent").

At this early stage of the litigation, Plaintiff is only required to plead facts, which, taken as true, permit the Court to draw the reasonable inference that, in terminating Plaintiff, Defendants acted with the intent to interfere with her ERISA rights. "This is not an overly burdensome standard." Smith, 2012 WL 3779651, at *4. While Plaintiff's allegations "are far from overwhelming evidence of intent, they are sufficient to show a plausible claim and to thus unlock the doors of discovery." See Pailleret, 2010 WL 143681, at *4.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion to dismiss. (Doc. No. 9.) An appropriate Order follows.